UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

DARREN NEWHART, on behalf of himself )
and others similarly situated, )
                                      )
            Plaintiff, )
                                      )
v.                                    )   Case No. 9:15-cv-81250- RLR
                                      )
QUICKEN LOANS, INC., and              )
SETERUS, INC.                         )
                                      )   **JURY DEMANDED**
            Defendants.               )

**FIRST AMENDED CLASS ACTION COMPLAINT**

**I.   INTRODUCTION AND STATEMENT OF THE CASE**

1. This action involves illegal calls made by Quicken Loans, Inc. ("Quicken Loans") in a joint promotion with Seterus, Inc. ("Seterus") to solicit financial services and refinancing of consumer loans using an automated telephone dialing system in violation of the Telephone Consumer Protection Act of 1991.

2. According to the Federal Trade Commission's recent Biennial Report to Congress, the emergence of new communications technologies has caused the number of illegal telemarketing calls to explode in the last four years. For example, Voice over IP ("VoIP") technology allows callers to make higher volumes of calls inexpensively from anywhere in the world through digital calls made over the internet.

3. The sheer volume of illegal telemarketing overwhelms the enforcement efforts of government agencies such as the Federal Trade Commission ("FTC") and the Federal Communications Commission. Consequently, private consumer enforcement actions, which

Congress authorized when it enacted the Telephone Consumer Protection Act of 1991 ("TCPA"), play a critical role in combatting illegal telemarketing.

4. Plaintiff brings this action to enforce the TCPA in the face of rampant illegal telemarketing. Through the TCPA, Congress outlawed telemarketing via unsolicited automated or prerecorded telephone calls in several contexts, including "to any telephone number assigned to . . . cellular telephones." 47 U.S.C. § 227(b)(1)(A)(iii); *see also* 47 C.F.R. § 64.1200(a)(2).

5. After October 16, 2013, these calls were made illegal unless made with prior, express consent, evidenced by a signed writing. *See In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 27 FCC Rcd. 1830, 1844 ¶ 33 (2012). Many companies, such as Quicken Loans in this case, disregard the TCPA and overtly impinge on the privacy and freedom from unwanted and incessant telemarketing.

6. In many cases, more than just the telemarketing agent is to blame; telemarketing abuses are often made by companies on behalf of others. Companies may have others do their bidding while turning a blind eye to telemarketing abuses relating to their products. After all, these companies profit from the illegal activity, regardless of whether they physically make the illegal telephone call.

7. Under the TCPA, these efforts to shirk responsibility fail. The TCPA imposes liability not only on the entities that physically dial illegal telemarketing calls, but also on those entities who benefit from them.

8. Vicarious liability is an essential feature of the remedial provisions and purposes of the TCPA. According to the FCC, a seller of a product or service may be vicariously liable for third-party violations of Section 227(b), even if the seller did not physically dial the illegal call, and even if the seller did not directly control the marketer who did. *See In re Joint Pet. filed by*

*Dish Network*, *LLC*, FCC 13-54 ¶ 37, 2013 WL 193449 (May 9, 2013) ("FCC Ruling"). Instead, a seller is liable for illegal calls of third-party marketers merely by authorizing them to market a seller's goods or services. *Id.* ¶ 47. This is so, in part, because the third-party placing illegal calls are often judgment proof and difficult to identify, and sellers are best positioned to monitor and control their activities. Thus, under these circumstances, and in service of protecting consumers from the nuisance and privacy-invasion of unwanted telemarketing, liability is also imputed to the telemarketers marketing the products of others.

9. Plaintiff brings this action to enforce the TCPA's strict limits on telemarketing calls placed through automated telephone dialing systems. On behalf of the proposed class defined below, Plaintiff seeks statutorily-authorized damages of $500-$1500 per illegal call, as well as injunctive relief requiring Defendants to comply with the law.

## II.   JURISDICTION AND VENUE

10. This Court has subject matter jurisdiction under 28 U.S.C. § 1332(d)(2). This matter in controversy exceeds $5 million, as each member of the proposed classes of tens of thousands is entitled to up to $1500 in statutory damages for each unlawful call.

11. This Court has federal question jurisdiction under 28 U.S.C. § 1331 because this action involves a violation of a federal statute, the TCPA.

12. This Court has personal jurisdiction because Defendants do business throughout the United States, including Florida. Further, their voluntary contact with the plaintiff in calling his cell phone in Florida made it foreseeable that Defendants would be hailed into a Florida court. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985).

13. Venue is proper in this District under 28 U.S.C. §§ 1931(b)-(c) and 1441(a) because the Defendants are deemed to reside in any judicial district in which they are subject to

personal jurisdiction at the time the action is commenced, and because Defendants' contacts with this District are sufficient to subject them to personal jurisdiction.

### III.     PARTIES AND DEFINITIONS

12. Plaintiff Darren Newhart is a resident of the state of Florida.

13. Defendant Quicken Loans, Inc. is a Michigan corporation, with a principal place of business in Livonia, Michigan. Quicken Loans is one of the largest mortgage lenders in the United States and is licensed and conducts business in all fifty states. It closed more than $80 billion in loans in 2013.

14. Defendant Seterus, Inc. is a Delaware Corporation, with a principal place of business in Research Triangle Park, North Carolina. Seterus is one of the nation's leading specialty loan servicing companies. Seterus provides Quicken Loans with phone numbers listed in its database of the loans it services to make illegal telemarketing calls that benefit both Defendants.

### IV.     APPLICABLE LAW

**A.     TCPA § 227(b) regulates autodialer and artificial or prerecorded voice calls to cellular phones.**

15. 47 U.S.C. § 227(b) regulates so-called "robocalls"—calls placed using an automated telephone dialing system ("ATDS"), and calls using an artificial or prerecorded voice.

16. Regarding telephone numbers assigned to a cellular telephone service, the statute prohibits ATDS calls—other than emergency calls or calls placed with prior express consent of the called party. *Id.* § 227(b)(1)(A).

17. Prior express consent is consent that is clearly and unmistakably conveyed by the call recipient to the party placing the call; implied consent is not sufficient.

4

18. Persons who receive calls in violation of these provisions may bring an action to recover the greater of the monetary loss caused by the violation, or $500. *Id.* § 227(b)(3). If the Court finds the defendant willfully or knowingly violated § 227(b), the Court may increase the award to up to $1500 per violation. *Id.*

**B.      The TCPA imposes liability on entities who do not directly place illegal calls.**

19. It has long been the law that a seller of goods or services can also be liable for TCPA violations, even if the seller does not directly place or initiate the calls.

20. As explained by the FCC, the TCPA and its regulations "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *See* Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Mem. and Order, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

21. The FCC reiterated this principle in 2005, when it stated that "a company on whose behalf a telephone solicitation is made bears the responsibility for any violation of our telemarketing rules, and calls placed by a third party on behalf of that company are treated as if the company itself placed the call." *See* Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991; Request of State Farm Mutual Automobile Insurance Company for Clarification and Declaratory Ruling, Declaratory Ruling, 20 FCC Rcd. 13664, 13667 ¶ 7 (2005).

22. The FCC reaffirmed this principle in 2013, stating that a seller may be liable under principles of apparent authority, actual authority, and ratification for telemarketing violations placed by third parties in violation of § 227(b). *In re Joint Pet. Filed by Dish Network,* 28 FCCR 6574 (2013).

## V.     FACTUAL BASIS FOR THE COMPLAINT

**A.     Allegations regarding Quicken Loans' equipment.**

23.     Quicken Loans uses a proprietary, automated calling system to make telephone calls to prospective customers, which it calls "Cannon."

24.     The Cannon auto-dialer dials calls automatically and routes calls to salespeople.

25.     Cannon is an "automatic telephone dialing system" as defined in the TCPA.

**B.     Allegations regarding Quicken Loans' calls to Plaintiff.**

26.     Plaintiff Darren Newhart received illegal telemarketing calls on his cellular telephone, from or on behalf of the Defendants indicated, who are liable either under theories of direct liability, *i.e.*, Quicken Loans, or vicarious liability, *i.e.*, Seterus, who authorized and enabled Quicken Loans' employees to place the illegal telemarketing calls to promote its services.

27.     Upon information and belief, Quicken Loans used Cannon to call Plaintiff's cellular telephone.

28.     Darren Newhart is the account holder and cellular telephone subscriber for the wireless number XXX-XXX-8800. Beginning on August 8, 2015, he received numerous illegal telephone calls to his cellular phone line XXX-XXX-8800 from Quicken Loans in Michigan with caller identification numbers of (313) 373-2967, (313) 373-2739, (313) 373-2289, (313) 373-2375, (313) 373-2048, and (313) 373-2262.

29.     Upon information and belief, Quicken Loans made all calls to Plaintiff's cellular telephone using the same equipment.

30.     On or about August 13, 2015, Quicken Loans called Plaintiff's same cellular phone line again. When Plaintiff answered, he heard a pause and a reconnection of the call to an

individual. Then, a Quicken Loans telemarketer came on the line. Plaintiff requested that Quicken Loans stop making calls to his cellular phone.

31. When Plaintiff asked Quicken Loans to remove his number from its calling database, the Quicken Loans representative stated that his number could not be removed.

32. After Plaintiff asked Quicken Loans to stop calling him, the calls persisted. Each time Plaintiff received a call from Quicken Loans, a different Quicken Loans representative was on the line.

33. Plaintiff received additional calls from Quicken Loans on or about August 10, 2015, August 11, 2015, August 12, 2015, August 13, 2013, August 20, 2015, August 25, 2015 (two calls), August 28, 2015 and August 31, 2015.

34. Quicken Loans' telemarketers left voice mail messages on Plaintiff's cellular telephone on or about August 8, 2015, August 10, 2015, August 11, 2015, August 12, 2015 and August 13, 2015.

35. On or about August 8, 2015, a Quicken Loans telemarketer named "Joshua" left a voice mail message on Plaintiff's cellular telephone indicating that he was calling on behalf of Seterus about the servicing of the loan on Plaintiff's mother's home in Florida. He further indicated that he had "good news" because Plaintiff's mother had been selected for an upgrade.

36. On or about August 10, 2015, "Seth" from Quicken Loans left a voice mail message about Plaintiff's mother loan on Plaintiff's cellular telephone. "Seth" indicated that he was "reaching out from Quicken Loans' servicing team." He stated that Quicken Loans wanted to lock in a low interest rate for Plaintiff's mother's loan.

37. Subsequently, on or about August 12, 2015, a female, Quicken Loans telemarketer left a voice mail message on Plaintiff's cellular telephone indicating that she was

7

calling about "the current loan we are servicing" for Plaintiff's mother. There was a pause and an audible reconnect to a person leaving a voicemail—a hallmark of an automatic telephone dialing system.

38. On or about August 13, 2015, a telemarketer named "Chad" left a voice mail message on Plaintiff's cellular telephone indicating that Plaintiff's mother's loan had been flagged for an upgrade and that Seterus had asked Quicken Loans to reach out to clients like Plaintiff's mother who were in modification loans scheduled for balloon payments.

39. On or about August 31, 2015, Quicken Loans called Plaintiff's same cellular phone line for what was the tenth time. When Plaintiff answered, he heard a pause and a reconnection of the call to an individual. Then, a Quicken Loans telemarketer came on the line. The telemarketer explained that the call was made pursuant to a "deal" between Quicken Loans and Seterus. Plaintiff requested that Quicken Loans stop making calls to his cellular phone.

40. Quicken Loans made the illegal calls to Plaintiff's cellular telephone without Plaintiff's consent and without any prior business relationship.

41. The calls were placed to make home loan refinancing offers involving Quicken Loans and Seterus. Upon information and belief, Quicken Loans would serve as the lender and Seterus would serve as the loan servicer.

42. Plaintiff has never had any relationship with either Quicken Loans or Seterus.

43. Based upon the telemarketers' representations and upon information and belief, Quicken Loans received the telephone numbers and information necessary to make these calls from Seterus. Further based upon information and belief, Quicken Loans made these calls for the benefit of both Defendants.

**C.     Quicken Loans placed telemarketing calls in violation of the TCPA.**

44.     Quicken Loans is no stranger to violating the TCPA. On April 6, 2007, the Federal Communications Commission issued Quicken Loans a citation for unlawful telemarketing practices.

45.     Quicken Loans is liable for placing calls as alleged above.

46.     Quicken Loans is liable under 47 U.S.C. § 227(b)(1) because it or its agents used an automatic telephone dialing system to place nonexempt calls to cellular telephones without the recipient's prior express consent.

**D.     Seterus is liable for the TCPA violations of Quicken Loans**

47.     With respect to telemarketing calls placed to Plaintiff and putative class members, Seterus is liable for the TCPA violations of Quicken Loans because:

   a. Quicken Loans placed calls on behalf of, and for the benefit of, Seterus;

   b. Quicken Loans placed calls under Seterus's actual authority;

   c. Quicken Loans placed calls under Seterus's apparent authority; or

   d. Seterus ratified the illegal conduct of Quicken Loans.

48.     Seterus is the servicer of Plaintiff's mother's mortgage loan, and according to Quicken Loan's representative, Plaintiff's cellular phone number was provided by Seterus to Quicken Loans.

49.     Upon information and belief, Seterus gave a listing of cellular phone numbers within Seterus's proprietary records to Quicken Loans in accordance with an agreement that would be mutually beneficial for both Quicken Loans and Seterus. Under this agreement, Seterus provided Quicken Loans with leads to call.

50. Upon information and belief, the relationship between Quicken Loans and Seterus are dictated by agreements that subject Quicken Loans to Seterus's control over the manner and method of the calling by Quicken Loans.

51. Also, Quicken Loans' telemarketing benefitted Seterus because:

   a. Upon information and belief, Quicken Loans' ATDS telemarketing calls from Seterus's leads gave Seterus exclusive mortgage servicing rights to any customers who Quicken Loans signed up;

   b. Upon information and belief, all offers communicated through Quicken Loans' ATDS telemarketing calls required the establishment or continuation of mortgage loan servicing fees determined by Seterus;

   c. Upon information and belief, Quicken Loans' ATDS telemarketing calls from Seterus's leads generated new clients and new fees for both Quicken Loans and Seterus.

52. Seterus's vicarious liability is supported by the fact that in the phone calls, Quicken Loans was authorized to use Seterus's trade name, disclose its relationship with Seterus and the fact that it was soliciting business on behalf of itself and Seterus.

53. Further, Quicken Loans would not have been able to make the illegal telemarketing calls to Plaintiff and Class members but for Seterus providing Quicken Loans with databases of telephone numbers.

54. Despite its authority, Seterus failed to control and prevent its business partner, Quicken Loans, from engaging in and benefiting from illegal telemarketing.

55. Seterus knew or should have known that Quicken Loans' telemarketing activities were in violation of the TCPA.

## V.     CLASS ACTION ALLEGATIONS

56.     Plaintiff brings this action under Rule 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure on behalf of the following class of cellular phone call recipients ("Cellular Class"), subject to modification after discovery and case development:

> All persons in the United States who: (1) received an automatic telephone dialing call from Quicken Loans and/or a third party acting on Quicken Loans's behalf, (2) to their cellular telephones, (3) had their cellular telephone numbers provided to Quicken Loans by Seterus, and (4) were called by Quicken Loans without prior express written consent, from September 2, 2011 through the date of class certification.

57.     Excluded from the classes are Defendants; any entities in which they have a controlling interest; their agents and employees; and any Judge to whom this action is assigned and any member of such Judge's staff and immediate family.

58.     Plaintiff proposes that he serve as class representative.

59.     Plaintiff and the classes have all been harmed by the actions of the Defendants. Plaintiff's privacy was wrongfully invaded, and he was understandably aggravated by having to deal with the frustration of repeated, unwanted phone calls forcing him to divert attention away from his work and other activities.

60.     Numerosity is satisfied. There are likely tens of thousands of class members. Individual joinder of these persons is impracticable.

61.     There are questions of law and fact common to Plaintiff and to the proposed classes, including, but not limited to:

   a. Whether the Defendants violated the TCPA by advertising via unsolicited automatic telephone dialing calls;

   b. Whether the Defendants violated the TCPA by not maintaining and executing a proper internal do-not-call list;

11

    c. Whether the Defendants conduct was knowing and/or willful;

    d. Whether the Plaintiffs and the class members are entitled to statutory damages as a result of Defendants' actions; and

    e. Whether Defendants should be enjoined from engaging in such conduct in the future.

62. Plaintiff's claims are typical of the claims of class members.

63. Plaintiff is an adequate representative of the classes because his interests do not conflict with the interests of the class members, he will fairly and adequately protect the interests of the class members, and he is represented by counsel skilled and experienced in class actions.

64. Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of this controversy.

65. The likelihood that individual members of the classes will prosecute separate actions is remote due to the time and expense necessary to conduct such litigation.

## VI. LEGAL CLAIMS

**First Claim - Violation of 47 U.S.C. § 227(b)(1) for calls made using an ATDS**
**(On behalf of the Cellular Class)**

66. Defendants violated 47 U.S.C. § 227(b)(1) by making numerous calls, either directly or through the actions of others, using an automatic telephone dialing system to a cellular phone without the prior express consent of the called party.

**Second Claim - Violations of 47 C.F.R. § 64.1200(d) and 47 U.S.C. § 227(c)(5)**
**for calls made to persons on Defendants' internal do-no-call lists**
**(On behalf of the Internal Do-Not Call Class)**

67. Defendants violated 47 C.F.R. § 64.1200(d) and 47 U.S.C. § 227(c)(5) by initiating any call, either directly or through the actions of others, for telemarketing purposes to numerous

persons, including Plaintiff, without following the required procedure for maintaining an internal list of those persons who do not wish to receive telemarketing calls, recording calls with persons who do not wish to receive telemarketing calls and honoring do-not-call requests from persons who do not wish to receive telemarketing calls.

## VII. RELIEF SOUGHT

Plaintiff requests the following relief for himself and all class members:

1. That the Court enter a judgment permanently enjoining the Defendants from engaging in or relying upon telemarketing, or, alternatively, from engaging in or relying upon telemarketing that violates the TCPA;

2. That, should the Court permit the Defendants to engage in or rely on telemarketing, it enter a judgment requiring them to adopt measures to ensure TCPA compliance, and that the Court retain jurisdiction for a period of six months to ensure that the Defendant comply with those measures;

3. That the Court enter a judgment awarding any other injunctive relief necessary to ensure the Defendants' compliance with the TCPA;

4. That the Court declare that the equipment used to place the calls to the Plaintiff are automatic telephone dialing systems within the meaning of the TCPA, and that calls placed using these systems only can be made to cellular telephone lines with the express written consent of the recipient;

5. That the Court enter a judgment finding that Quicken Loans acted as Seterus's agent for purposes of the class calls, and therefore that Seterus is vicariously liable to Plaintiff and all class members for all violations arising from the calls;

6. That the Court enter a judgement finding that Quicken Loans is directly liable to Plaintiff and all class members for all violations arising from the calls;

7. That the Court enter a judgment finding Quicken Loans and Seterus jointly and severally liable for to Plaintiff and all class members for all violations arising from the calls;

8. That Quicken Loans, Seterus, and their agents, or anyone acting on their behalf, be immediately restrained from altering, deleting or destroying any documents or records that could be used to identify class members;

9. That the Court certify the claims of Plaintiff and all other persons similarly situated as class action claims under Rule 23 of the Federal Rules of Civil Procedure;

10. For each violation of the TCPA, a $500 penalty be awarded to Plaintiff and each class member;

11. For each willful or knowing violation of the TCPA, a $1500 penalty be awarded to Plaintiffs and each class member;

12. That the Court enter an order awarding Plaintiff reasonable attorneys' fees and costs;

13. That Plaintiff and all class members be granted such other and further relief as is just and equitable under the circumstances; and

14. Plaintiff requests a trial by jury.

Dated:  December 11, 2015                     BAILEY & GLASSER, LLP

By:   /s/ James L. Kauffman
James L. Kauffman (Fla. Bar. No. 12915)
1054 31st Street, Suite 230
Washington, DC 20007
Telephone: (202) 463-2101
Facsimile:  (202) 342-2103
Email: jmarshall@baileyglasser.com
Email: jkauffman@baileyglasser.com

*Counsel for Plaintiff and the Putative Class*