IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
CASE NO. 9:15-CV-81250

DARREN NEWHART, individually and on behalf of all others similarly situated,

        Plaintiff,

  v.

QUICKEN LOANS INC., and
SETERUS, INC.

        Defendants.

## ORDER

### I. INTRODUCTION

This cause is before the Court upon Plaintiff Darren Newhart's Motion for Class Certification ("Motion"). DE 74. Plaintiff requests that the Court certify a class to address alleged violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* (TCPA), by Defendant Quicken Loans Inc. However, the predominance requirement of Federal Rule of Civil Procedure 23(b)(3) is unmet. Plaintiff's Motion is, therefore, denied.

### II. FACTS

In 2015 Fannie Mae was charged by its federal conservator with providing HARP relief to its borrowers. Def. App., Ex. 8 at ¶ 4.[1] Fannie Mae enlisted Defendant Quicken Loans to assist it with this task and provided Defendant with the addresses and telephone numbers of approximately 2,000 HARP-eligible borrowers. *Id.*, Ex. 17 at 13:4-16. Quicken Loans communicated with these Fannie Mae borrowers about HARP relief. *See, e.g.*, *id.*, Ex. 3 at ¶ 7.

---

[1] All citations to "Def. App." are to the exhibit number in the Appendix to Quicken Loans' Opposition to Plaintiff's Motion for Class Certification containing the referenced evidence.

1

These communications varied. The borrowers initiated some through various means (*e.g.*, telephone, email, and/or web submission to Quicken Loans or other third parties) after receiving one or more letters about HARP. *Id.*, Ex. 1 at ¶¶ 17-30; *see also, e.g.*, *id.*, Ex. 2 at ¶ 12. Quicken Loans initiated others by calling the borrowers directly. *See id.*, Ex. 1 at ¶¶ 31-33; *see also, e.g.*, *id.*, Ex. 2 at ¶¶ 8-10. During some of these communications, the borrowers provided Quicken Loans with cell and other telephone numbers different from those that Fannie Mae had provided, and requested that Quicken Loans call them (the borrowers) at that number. *See, e.g.*, *id.*, Ex. 3 at ¶¶ 9-10. In other communications, the borrowers confirmed that the cell or other number Fannie Mae had provided (or, in some cases, that the borrower had previously provided to Quicken Loans through various direct and third party channels) was a good one for them and requested that Quicken Loans call them at that number. *Id.* at ¶ 9.

The topics discussed also differed. Some of the calls concerned the availability of HARP relief to the borrower, his or her particular circumstances, and/or whether the borrower wanted to pursue HARP relief. *See, e.g.*, *id.* at ¶¶ 6-8. Others calls were with borrowers who already had elected to pursue HARP relief and concerned matters relating to securing that relief, such as providing financial and tax records, updating the borrower on the status of his or her application, responding to questions from the borrower, scheduling the borrower's execution of documents necessary to complete the transaction, and/or congratulating the borrower on obtaining HARP relief. *Id.*, Ex. 1 at ¶ 11 & Ex. A; *see also, e.g.*, *id.*, Ex. 2 at ¶ 7.

Plaintiff alleges that Quicken Loans violated the TCPA by placing nine calls to his cellular telephone using an automatic telephone dialing system ("ATDS") without his consent in August 2015. DE 30 at ¶¶ 28, 33. On July 8, 2016, Plaintiff moved to certify his TCPA claim under Fed. R. Civ. P. 23(a) & (b)(3) as to the following class (the "Proposed Class"):

> All persons in the United States to whom: (1) Quicken Loans made a call, (2) to a telephone number assigned to a cellular telephone service, and (3) were identified by Quicken Loans as a Fannie Mae Seterus HARP Qualified Lead from July 1, 2015 through the date of class certification.

DE 75 at 2. Quicken Loans filed its Opposition to the Motion on August 1, 2016, DE 80, and Plaintiff filed his Reply on August 26, 2016, DE 121. Both parties subsequently submitted supplemental authority. DE 126, 131. The Court heard argument on September 22, 2016.

### III.   APPLICABLE LAW

"The class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011) (internal citation omitted). A class may be certified only if a plaintiff demonstrates compliance with each of the four elements of Fed. R. Civ. P. 23(a)—numerosity, commonality, typicality, and adequacy—and satisfies one of the three subdivisions of Fed. R. Civ. P. 23(b). Fed. R. Civ. P. 23(a), 23(b); *Valley Drug Co. v. Geneva Pharm., Inc.*, 350 F.3d 1181, 1187 (11th Cir. 2003). Here, Plaintiff seeks certification under Rule 23(b)(3), and so "must demonstrate that common questions predominate over individual issues and that a class action is the superior means of adjudicating such a controversy." *Fitzhenry v. ADT Corp.*, 2014 WL 6663379, at *5 (S.D. Fla. Nov. 3, 2014); Fed. R. Civ. P. 23(b)(3).

### IV.   DISCUSSION

To satisfy Rule 23(b)(3)'s predominance requirement, Plaintiff must demonstrate that "questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). Put another way, "'the issues in the class action that are subject to generalized proof and thus applicable to the class as a whole must predominate over those issues that are subject only to individualized proof.'" *Babineau v. Fed. Exp. Corp.*, 576 F.3d 1183, 1191 (11th Cir. 2009). The Court must examine "the claims, defenses, relevant facts, and applicable substantive law . . . to assess the degree to which

3

resolution of the classwide issues will further each individual class member's claim against the defendant.'" *Id.* (quoting *Klay v. Humana, Inc.*, 382 F.3d 1241, 1254 (11th Cir. 2004)). Here, predominance is lacking because whether the calls were consented to—a threshold issue—is not subject to generalized proof.

### A. CONSENT: AN INDIVIDUALIZED INQUIRY

The TCPA makes it unlawful for any person "to make any call . . . using any automatic telephone dialing system . . . to any telephone number assigned to a . . . cellular telephone service" without the recipient's prior express consent. *See* 47 U.S.C. § 227(b). To recover under the TCPA, a plaintiff must prove that an ATDS was used to call him or her without prior express consent at a number assigned to a cell phone that he or she was the subscriber or user of at the time of each challenged call. *Cellco P'ship v. Plaza Resorts Inc.*, No. 12-cv-81238, 2013 WL 5436553, at *4 (S.D. Fla. Sept. 27, 2013).

The parties agree that if the class members consented to be called, no liability can attach under the TCPA. 47 U.S.C. § 227(b)(1)(A). At this stage, the Court need not decide whether any class member actually consented. *Heffner v. Blue Cross & Blue Shield of Ala., Inc.*, 443 F.3d 1330, 1337 (11th Cir. 2006). It must, however, assess whether the issue can be resolved by common, classwide evidence. *Dukes*, 564 U.S. at 350. The Court concludes that resolving the consent issue will depend upon multiple layers of individualized evidence about each call and the circumstances that preceded it. Therefore, predominance is lacking.

There are two layers to the consent inquiry. First, the trier of fact must determine whether each challenged call was made for a telemarketing purpose. If so, prior express written consent would have been required. 47 C.F.R. § 64.1200(a)(2). If not, prior express consent need not have been in writing. *In the Matter of Rules & Regulations Implementing the Tel. Consumer*

4

*Prot. Act of 1991*, 27 FCC Rcd. 1830, 1842 (2012). Second, the trier of fact must determine whether Quicken Loans possessed the requisite consent before making each challenged call.

Under FCC guidance, prior express written consent is required for a "telephone call that . . . constitutes telemarketing." 47 C.F.R. § 64.1200(a)(2). The FCC has defined "telemarketing" as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." 47 C.F.R. § 64.1200(f)(12). If a call is not for a telemarketing purpose, then prior express consent (which need not be written) is sufficient. 27 FCC Rcd. at 1842.

Plaintiff asks the Court to conclude that every call Quicken Loans made to a Fannie Mae borrower in the Proposed Class was for telemarketing because "the purpose of the overall campaign" was to encourage borrowers to obtain a HARP refinance loan. DE 121 at 13. But Quicken Loans disputes that the challenged calls were for a telemarketing purpose. *See* DE 80 at 10–11. The Court need not resolve this dispute at this stage of the litigation because, even assuming *arguendo* that some calls had a telemarketing purpose, the question cannot be answered by reference to common, classwide evidence.

The Court agrees with Quicken Loans that deciding whether the telemarketing consent rules apply will require an examination of individual calls, not the "overall campaign." DE 80 at 11. The FCC's regulation refers to the "purpose" of each singular *call* and contains no reference to the purpose of the overall campaign. 47 C.F.R. § 64.1200(f)(12) (telemarketing defined as "the initiation of *a* telephone *call*") (emphasis added). The FCC has expressly recognized, in the unsolicited fax context, that even when some aspect of a series of communications might meet the telemarketing rule, others might not, and so it is necessary to examine the communications separately. There, the agency found that while an initial fax may run afoul of the TCPA because

it contains an advertisement, subsequent communications between the defendant and the fax recipient "whose purpose is to facilitate, complete, or confirm a commercial transaction that the recipient has previously agreed to enter into with the sender" do not because they "are not advertisements." 21 FCC Rcd. 3787, ¶ 49 (Apr. 5, 2006). The FCC has applied this same rationale in the mortgage lending context. *Id.* at ¶ 49 ("Communications sent to facilitate a loan transaction, such as property appraisals, summary of closing costs, disclosures (such as the Good Faith Estimate) and other similar documents are not advertisements when their purpose is to complete the financial transaction.").

Following this FCC guidance, the Ninth Circuit recently rejected a similar argument that a text to complete a registration process initiated by the plaintiff in response to a marketing communication from the defendant should be treated as a telemarketing communication requiring prior express written consent. *Aderhold v. Car2Go N.A. LLC*, No. 14-35208, ---Fed. Appx.---, 2016 WL 4709873, at *1 (9th Cir. Sept. 9, 2016) (text "directed . . . to completing the registration process initiated by [the plaintiff] and to validating personal information" was not "telemarketing" because it did not "contain[] content encouraging purchase of [defendant's] services"); *see also Daniel v. Five Stars Loyalty, Inc.*, 2015 WL 7454260, at *5 (N.D. Cal. Nov. 24, 2015) (text message sent "in direct and immediate response to [plaintiff's] inquiry regarding [defendant's] program and to his provision of his telephone number" was not telemarketing); *Chesbro v. Best Buy Stores*, 705 F.3d 913, 918 (9th Cir. 2012) (considering call content and context in evaluating telemarketing question); *Dolemba v. Ill. Farmers Ins. Co.*, No. 15-463, 2015 WL 4727331, at *4-5 (N.D. Ill. Aug. 10, 2015) (same).

Here, Defendant produced evidence that the purpose of the challenged calls varied from one to the next.[2] Some calls were made in direct response to written and oral requests from borrowers. *See, e.g.*, Def. App., Ex. 1 at ¶¶ 26-30. Such invited calls are not unsolicited telemarketing calls "initiated" for the purpose of marketing a good or service. 47 C.F.R. § 64.1200(f)(12); *see also Breslow v. Wells Fargo Bank, N.A.*, 857 F. Supp. 2d 1316, 1321 (S.D. Fla. 2012) ("The TCPA was intended to protect individuals from unsolicited automated telemarketing calls."). Other calls were transactional communications to facilitate, complete, or confirm HARP relief that the Fannie Mae borrower already had elected to pursue. Def. App., Ex. 2 at ¶ 7; *id.*, Ex. 3 at ¶ 7; *id.*, Ex. 4 at ¶ 9. As the FCC and Ninth Circuit have recognized, these calls do not constitute telemarketing because their purpose is not to "encourage the purchase of any [good or] service." 47 C.F.R. § 64.1200(f)(12); 21 FCC Rcd. 3787, 3812 ¶ 49 (Apr. 5, 2006); *Aderhold v. Car2go N.A. LLC*, No. 14-35208, at 3 (9th Cir. Sept. 9, 2016).

As the challenged calls are not uniform in purpose, the telemarketing issue cannot be resolved by common, classwide evidence. Rather, to determine the purpose of each call (and necessary level of prior express consent), the trier of fact must evaluate evidence (testimony, recordings, and call records and notes) about the content of each call and the events that preceded it—a need inconsistent with class treatment. *Fitzhenry*, 2014 WL 6663379, at *7 (existence of individualized issues about content of challenged calls, "which require listening to [thousands of] phone calls" precluded predominance finding).[3] That evidence may reveal that

---

[2] This evidence distinguishes this case from those relied upon by Plaintiff where the telemarketing purpose of the challenged call could be resolved by common evidence because each class member received the same prerecorded phone message under the same circumstances. *See, e.g.*, *Bennett v. Boyd Biloxi, LLC*, No. CIV. 14-0330-WS-M, 2015 WL 2131231, at *1-3 (S.D. Ala. May 6, 2015) (identical pre-recorded calls); *Birchmeier v. Caribbean Cruise Line, Inc.*, 302 F.R.D. 240, 251 (N.D. Ill. 2014) (same); *Booth v. Appstack, Inc.*, No. C13-1533JLR, 2016 WL 3030256, at *3 (W.D. Wash. May 25, 2016) (same).

7

there was no telemarketing purpose (because, for example, the borrower requested the call in a prior communication or the call involved a request for documents), or it may reveal a potential telemarketing purpose, or it may reveal a potential dual purpose. In the context of such potential dual purpose calls, the inquiry will be more complex because FCC guidance provides that the "predominant purpose" of the call should control where loan modification issues are involved. 27 FCC Rcd. at 1843, ¶ 31 (2012) (in evaluating whether calls placed pursuant to the American Recovery and Reinvestment Act are telemarketing, the "predominant purpose" of the call is determinative). Such individualized inquiries will necessitate a host of mini-trials. The requisite predominance of common questions of fact is thus lacking. *Fitzhenry*, 2014 WL 6663379, at *6 (TCPA case unsuitable for class treatment where content of calls was not uniform across the class even though calls made as part of single campaign).

Plaintiff has failed to sustain his burden to demonstrate that the prior express written consent issue can be resolved for all class members by common evidence. This is best illustrated by Plaintiff's attempt to refute—borrower-by-borrower—the evidence of prior express written consent defendant put before the Court. In his Reply Brief, Plaintiff put forward a chart to address what he calls Quicken Loans' seven "buckets" of consent evidence. As Plaintiff's presentation confirms, however, the written consent evidence is uniform neither across, nor within these groupings. DE 121 at 10. For instance, Plaintiff argues that the written consent provided by three borrowers through Lowermybills.com is faulty because it is "[f]ine print, not clear or conspicuous under 47 CFR 64.1200(f)(8)(i)," that some written consent provided to Seterus is missing a disclosure under 47 CFR 64.1200(f)(8)(i)(A), and that different written consent provided to Seterus is missing a disclosure under 47 CFR 64.1200(f)(8)(i)(A) or (B). *Id.* While he assures the Court that this borrower-by-borrower assessment of consent can be applied

classwide and asserts that this proves that Quicken Loans lacked any prior express written consent for any call, he ignores that having to examine each writing separately, and then coming to differing conclusions about each, proves that this is an individualized exercise that will need to be repeated for every class member. *Shamblin*, 2015 WL 1909765, at *12; *Barrett v. ADT Corp.*, No. 15-1348, 2016 WL 865672, at *9 (S.D. Ohio Mar. 7, 2016); *Balthazor v. Central Credit Sers.*, 2012 WL 6725872, at *3-5 (S.D. Flaw. Dec. 27, 2012); *Selby v. LNV Funding LLC*, 2016 U.S. Dist. LEXIS 83940, at *35 (S.D. Cal. June 22, 2016). This exercise is further complicated by variations within each "bucket" of written consent. For instance, the Seterus form of consent changed over time (Def. App., Ex. 1 at ¶ 42; *id.*, Ex. 9 at ¶¶ 19-24 & Exs. B-G), and the Court would not be able to make a single finding that could cover all Seterus forms without examining each different form used across the entire class.

Plaintiff's demonstration that the Court would need to examine different forms of written consent for different borrowers to determine whether they comply with the FCC's regulations shows that the class inquiry would fracture into mini-trials incompatible with class treatment. *Warnick v. Dish Network LLC*, 301 F.R.D. 551, 556 (D. Colo. 2014) ("If the court must undertake individualized inquiries in order to determine whether a person is a member of the class, the class is not appropriate."); *see also Shamblin*, 2015 WL 1909765, at *7 ("Based on the current record, the Court determines that there can never be common answers to the question[] of whether . . . the subscriber consented to be called.").

Furthermore, for the non-telemarketing calls where only prior express (and not written) consent was required, Quicken Loans has adduced substantial (and unrefuted) evidence that borrowers provided written and oral prior express consent to receive calls on their cell phones from Quicken Loans in a variety of ways. Quicken Loans obtained that permission from

borrowers via email (Def. App., Ex. 1 at ¶¶ 23-24 & Ex. B), website submissions (*id.* at ¶¶ 17-22, 37-38), loan modification applications (*id.*, Ex. 9 at ¶¶ 19-22), inbound calls from borrowers (*id.*, Ex. 1 at ¶¶ 25-30), outbound calls placed to landline phones during which borrowers asked to be called back on a cellular telephone (*id.* at ¶¶ 31-33), online portals (*id.* at ¶¶ 17-22), and other means. *Id.* at ¶ 14. And none of this evidence speaks to the fact that often "the best place to find proof of consent may rest with the consumers themselves." *Barrett*, 2016 WL 865672, at *9. At trial, Quicken Loans would be entitled to call the borrowers (and others) to prove its consent for any of the challenged calls and the borrowers could, in turn, attempt to refute records or recordings of consent. For these reasons, this Court thus joins the chorus of other courts faced with TCPA class actions that have found such individualized inquiries on the consent issue would predominate over any common issues. *Shamblin*, 2015 WL 1909765, at *12; *Hicks*, 2008 WL 5479111, at *7-8; *Barrett*, 2016 WL 865672, at *9; *Selby*, 2016 U.S. Dist. LEXIS 83940, at *34-35; *Connelly v. Hilton Grand Vacations Co., LLC*, 294 F.R.D. 574, 577-78 (S.D. Cal. 2013).

The Court notes that Defendant also contests class certification on other grounds. Defendant argues, for example, that Plaintiff is not a member of the proposed class because Plaintiff's mother—not Plaintiff—was "identified by Quicken Loans as a Fannie-Mae Seterus HARP Qualified Lead." Defendant also argues that typicality is not satisfied because, unlike other members of the proposed class, Plaintiff was called by mistake and was not eligible for HARP relief. However, the Court finds that it need not reach these issues and others addressed in Defendant's briefing because the predominance requirement is unmet.

## V.     CONCLUSION

For these reasons, the Court hereby denies Plaintiff's Motion for Class Certification.

**DONE and ORDERED** in Chambers, Fort Pierce, Florida, this the 12th day of October, 2016.

                                                                            _____
                                                                            ROBIN L. ROSENBERG
                                                                            UNITED STATES DISTRICT JUDGE

Copies furnished to Counsel of Record